FEE PAID
S/I

FILED

2024 OCT 21 AM 11: 16

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CAL'F.
LOS ANGELES

ASH

Joundi White
309 E Hillcrest Blvd
Inglewood, CA 90301
(714) 855-9894
jawhite711@yahoo.com
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JOUNDI WHITE,

       Plaintiff,

  vs.

CITY OF LOS ANGELES, LOS ANGELES BOARD OF POLICE COMMISSIONERS, LOS ANGELES POLICE DEPARTMENT, MAYOR KAREN BASS, CHIEF OF POLICE DOMINIC CHOI, OFFICER GOEITTING, OFFICER REYNA, OFFICER OCHOA, and DOES 1-5,

       Defendants.

Case No.: 2:24CV9035-MEMF-(JC)

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS (42 U.S.C. §§ 1983, 1985, 1986) and SUPPLEMENTAL STATE-LAW CLAIMS (Cal. Civ. Code §§ 51.7, 52, 52.1, and 52.4, Battery, False Arrest and Imprisonment, Sexual Battery)**

**DEMAND FOR JURY TRIAL**

### JURISDICTION

1. This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). Federal question jurisdiction arises pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983, 1985, and 1986.

COMPLAINT

1

2. Plaintiff's state-law claims form part of the same case and controversy and are therefore within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

## VENUE

3. Venue is proper pursuant to 28 U.S.C § 1391 because the conduct giving rise to Plaintiff's claims involve the Los Angeles Police Department, occurred in the County of Los Angeles, and occurred within this judicial district.

## PARTIES

4. Plaintiff Joundi White is a Black transgender man who is competent to bring this suit.

5. Defendant City of Los Angeles ("the City") operates under California law.

6. Defendant Los Angeles Board of Police Commissioners ("Board") is the oversight body for the Los Angeles Police Department and is sued in its capacity as supervisor and decision maker for the Los Angeles Police Department.

7. Defendant Los Angeles Police Department ("LAPD") is an independent entity subject to suit. LAPD maintains the Southwest Community Police Station ("Southwest Station") at 1546 W Martin Luther King Jr. Blvd, Los Angeles, CA 90062.

8. Defendant Karen Bass is the Mayor of the City and is sued in her individual capacity as supervisor and decision maker for the City and for the LAPD.

9. Defendant Dominic Choi is the appointed LAPD Chief of Police at the time of these incidents. He is sued in his individual capacity as a decision maker and supervisor for the City and the LAPD.

10. Defendants Goeitting, Reyna, Ochoa, and Does #1-5 are LAPD officers. They are sued in their individual capacities for actions taken under color of state law.

COMPLAINT

2

11. Does #1-5 are unnamed because their identities are unknown at this point. Plaintiff is informed and believes that each is an employee or agent of the City or the LAPD and was involved in one or more deprivations of Plaintiff's federal constitutional or statutory rights either as a direct participant or supervisor.

12. Each individually named defendant and each Doe defendant acted under color of state law and within the scope of his or her agency and employment with the City and the LAPD. Each acted in concert with the other Defendants.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff timely filed appropriate administrative claims, which have been denied. This lawsuit is timely.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

14. At approximately 11:45 p.m. on October 27, 2023, Plaintiff was driving northbound on Crenshaw Boulevard passing Adams Boulevard, approaching the I-10 freeway in Los Angeles, California.

15. Plaintiff noticed a police vehicle unit from the LAPD behind him. When the light turned green, the unit turned on their lights. Plaintiff made sure it was safe to pull over in traffic and pulled over.

16. Defendant Goeitting approached Plaintiff while Defendant Reyna watched the passenger side door. Defendant Goeitting asked about Plaintiff's license plates. Plaintiff told Defendant Goeitting that Plaintiff had just moved back into California and had just paid for his vehicle registration. Defendant Goeitting then asked for Plaintiff's license, which Plaintiff provided.

17. After checking Plaintiff's license, Defendant Goeitting opened the car door and told Plaintiff to get out of the car.

18. Plaintiff asked why he was being asked to get out. He grabbed his wallet and his phone to record. Defendant Goeitting told him to put the phone down.

COMPLAINT

3

Plaintiff asked why he couldn't record this. Again Defendant Goeitting told him to leave his phone in the car. Plaintiff got out of the car holding his phone and wallet.

19. Both Defendants Goeitting and Reyna touched Plaintiff. Plaintiff asked what they were touching him for and whether he was being detained. Defendant Goeitting replied yes. Plaintiff was confused and ask for the reason. Defendant Goeitting did not give one.

20. At this time Plaintiff asked if Defendant Goeitting's body camera was on. Defendant Goeitting stated that it was.

21. Defendant Goeitting asked Plaintiff to turn around and put his hands on the top of the car.

22. Defendants Goeitting and Reyna began touching Plaintiff again, and he was afraid at that point because he had not done anything. Neither Defendant Goeitting nor Defendant Reyna told Plaintiff why he was being detained.

23. Defendants Goeitting and Reyna grabbed Plaintiff's arms from the top of the car, and Plaintiff got stiff in fear. Defendant Reyna was very aggressive with Plaintiff's left arm and shoulder and kept telling him to stop resisting when in fact Plaintiff was not. Plaintiff responded calmly, "I'm not resisting, what are you doing?" Plaintiff let them put the cuffs on tightly because he believed that if he didn't, he would be in worse condition. All the force that they used was unnecessary because Plaintiff was already in cuffs and not resisting.

24. Defendants Goeitting and Reyna searched Plaintiff and took his phone and wallet. They walked him to the bridge wall/gate overlooking the freeway, unnecessarily pushing him up against this wall/gate simply because they could.

COMPLAINT

4

25. More officers showed up, including Defendant Ochoa, who stared at Plaintiff intensely and in an intimidating manner. In total, six officers were present in an effort to intimidate Plaintiff.

26. Plaintiff asked Defendant Ochoa if he could sit down. Defendant Ochoa denied the request, stating that Plaintiff, who was wearing slippers and in handcuffs, might run. Plaintiff turned around and sat down anyway, and Defendant Ochoa used unnecessary force in the process.

27. Defendant Goeitting told Plaintiff to "shut up and act like a man," making an explicit reference to Plaintiff's identity as a transgender man.

28. Plaintiff watched Defendants Goeitting, Reyna, Ochoa, and Does #1-3 tear up his car (which was later impounded), looking for a reason to add charges. These Defendants were so thorough in their search that they popped the hood and the paneling inside the car.

29. Defendant Goeitting then approached Plaintiff to stand him up. Defendant Doe #1 helped Defendant Goeitting get Plaintiff to his feet. As they walked him to the police vehicle, Defendant Goeitting told Plaintiff that there was a felony warrant for his arrest for a suspended driver's license. Plaintiff laughed and asked, "For a suspended driver's license?"

30. While putting Plaintiff in the unit and putting on his seat belt, Defendant Reyna lied and said that Plaintiff intentionally spit on him. Plaintiff did not spit on Defendant Reyna or anyone else, which is recorded on the officers' body camera footage.

31. During the drive to the Southwest Station, Plaintiff watched Defendant Reyna write "violent tendencies" in the report he was completing. Then Plaintiff asked what the "violent tendencies" were: asking questions, talking, or being able to look these cowardly Defendants in the eye.

32. Once Plaintiff got to the Southwest Station between 12:30 and 1:00 a.m. on October 28, 2023, Defendant Doe #4 then asked Plaintiff about his health.

COMPLAINT

5

At that point, Plaintiff was starting to feel pain and told Defendant Doe #4 that his left shoulder, left arm, and lower back were hurting.

33. Shortly after that, Plaintiff was placed in the holding cell, and Defendant Reyna searched him again. This time when he searched Plaintiff, Defendant Reyna grabbed and rubbed on Plaintiff's breast in a sexual and violent manner. Plaintiff has not had surgery yet to remove his breasts. Plaintiff told Defendant Reyna, "I don't like men, don't touch me that way." Defendants Reyna and Goeitting both laughed. Defendant Reyna responded laughing and stated, "Neither do I" as he continued fondling Plaintiff while searching him. Again, this was another explicit reference to Plaintiff's gender and identity, as if Defendant Reyna was trying to prove that he did not consider Plaintiff to be a real man.

34. Later, after retrieving Plaintiff from the holding cell, Defendants Goeitting and Reyna's approach shifted considerably. Plaintiff was "Bro" to them from that point forward. It is unclear what changed their demeanor.

35. Defendant Goeitting opened the door for Defendant Reyna to handcuff Plaintiff to take him to Metropolitan Detention Center ("MDC"). Plaintiff refused to go and told Defendant Goeitting that Defendant Reyna touched him improperly, so he would not allow Defendant Reyna to touch him again. Defendants Goeitting and Reyna appeared uncomfortable, closed the holding tank door, and walked down the hall.

36. When they returned Defendant Goeitting opened the door so he could put the cuffs on Plaintiff. Before Plaintiff complied, he asked if Defendant Goeitting's cameras were on because Plaintiff did not feel safe. Defendant Goeitting responded yes. Plaintiff complied and was handcuffed.

37. Plaintiff asked for a nurse for his injuries and was told he would see one at MDC.

COMPLAINT

6

38. At approximately 2 a.m. on October 28, 2023, Plaintiff arrived at MDC and was seated and cuffed to a bar connected to a wall. Plaintiff again asked for a nurse and was told he would have to wait.

39. Defendant Doe #5 attempted to interview Plaintiff about the arrest and Defendant Reyna's conduct, but the interview ended when Plaintiff asked for an attorney to assist.

40. Defendant Reyna approached Plaintiff with paperwork to sign, which Plaintiff refused. Defendant Reyna threatened Plaintiff that if he did not sign the paperwork, it would take longer to see the nurse and to get processed out.

41. Plaintiff told Defendant Reyna that he did not understand the paperwork. Defendant Reyna said that he would explain, but Plaintiff said, "You lied and said I maliciously purposely spit on you. I don't trust you."

42. Defendant Reyna insisted and repeated the threat that it would take longer if Plaintiff did not sign the paperwork. Again Plaintiff refused to trust an officer that would lie and say Plaintiff spit upon him and an officer that would touch Plaintiff in a sexual manner while he was powerless in handcuffs and at the mercy of police custody.

43. At approximately 3:45 a.m. on October 28, 2023, Plaintiff was taken to see the nurse. He told her about the injuries to his arm from the Defendants' treatment. She responded to his wrist, and he clarified again that his shoulder was injured by Defendant Reyna. The nurse asked to touch Plaintiff. He refused because he did not desire for his body to be further violated. He asked for medicine for pain, which is the only care he accepted. Then he was taken by Defendants Goeitting and Reyna to be booked.

44. Plaintiff was given a paper with his charges on them and stated that there was a misdemeanor warrant for him. Plaintiff looked at Defendant Goeitting, confused, and told Goeitting that he lied when he had claimed that Plaintiff

COMPLAINT

7

was being arrested on a felony warrant. Defendant Goeitting looked away in shame. One of the MDC officers tried to intervene and help Defendant Goeitting recover by saying the judge could have made some changes. Plaintiff checked the clock and asked if a judge would do that in the middle of the night. There was no response to this inquiry.

45. Plaintiff was taken to a holding cell. Finally, he was released at approximately 8 a.m. on the morning of October 28, 2023. Plaintiff spent about 8 hours in police custody before he was released and able to seek competent medical attention.

46. Defendants Goeitting and Reyna deliberately made a huge spectacle out of this arrest, using unnecessary force, using intimidation tactics by calling four other officers to the scene, and touching Plaintiff violently. They had it made up in their minds who Plaintiff was before they even told Plaintiff what he was being detained for. Defendants Goeitting and Reyna were offended by Plaintiff, a Black transgender man who questioned their authority, and in response, they attempted to put Plaintiff in his place through their actions.

47. Defendants Goeitting and Reyna's behavior was racially motivated against Plaintiff, who is Black, and also based on Plaintiff's gender identity as a transgender man. That was made clear by the several references to it and their machismo in order to prove their manhood to another man in handcuffs.

48. Defendants Goeitting, Reyna, Ochoa, and Does #1-5 failed to uphold their duty to treat Plaintiff with dignity and respect as a human being. Instead, they abused their power. Their behavior is a direct reflection of the failure of leadership of Defendants City, Bass, Board, LAPD, and Choi.

## DAMAGES

49. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, decisions, incompetence and cowardice of Defendants,

Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

50. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, Plaintiff incurred medical and other expenses, and will incur future medical and other expenses, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

51. As a further direct and proximate result of the acts, omissions, customs, practices, policies and decisions of Defendants, Plaintiff incurred various expenses and other special damages, including but not limited to impound fees, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

52. As a further direct and proximate result of the acts, omissions, customs, practices, policies and decisions of Defendants, Plaintiff lost income and in the future will lose income in a sum to be determined at trial.

53. The acts and omissions by Defendants Goeitting, Reyna, Ochoa, and Does #1-5 were willful, wanton, malicious and oppressive, with reckless disregard for, and with the intent to deprive Plaintiff and others similarly situated of their constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be determined at trial.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; 42 U.S.C. § 1983

COMPLAINT

9

**(Defendants Goeitting, Reyna, Ochoa, and Does #1-5)**

54. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

55. Defendants Goeitting, Reyna, Ochoa, and Does #1-5, while acting under color of law, deprived Plaintiff of his civil rights by violating rights guaranteed by the Fourth and Fourteenth Amendments IV to the United States Constitution, including, but not limited to the right to be free from detentions based on racial identity rather than reasonable suspicion (Equal Protection), and the right to be free from excessive force and false arrest for unsubstantiated felony assault charges (Fourth Amendment).

56. By committing the acts described above in paragraphs 1-53, Defendants caused and/or permitted the violation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

57. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## SECOND CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 - Entity and Supervisory Liability
**(Defendants City, Board, LAPD, Bass, Choi, and Does #1-5)**

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

59. Defendants Board, LAPD, Bass, Choi, and Does #1-5, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff and others similarly situated (including the right to be free from racial profiling, excessive force, unreasonable searches and seizures, and false arrests and imprisonment based on false reports), maintained, enforced, and applied policies and practices that facilitate ongoing race- and gender-based abuse.

COMPLAINT

10

60. Defendants' practices and customs of failing to properly hire, train, supervise, monitor, discipline, and control police officers; their practice of permitting officers to continue contact with an individual even after a complaint of assault has been made; and the encouragement of unreasonable searches and seizures and wrongful arrests encourage police officers to act with impunity.

61. The aforementioned policies, practices and customs, separately and together, proximately caused injury to Plaintiff because Defendants Goeitting, Reyna, Ochoa, and Does #1-5 had reason to believe that their misconduct would go unchallenged and that they are effectively immune from disciplinary or judicial action.

62. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

### THIRD CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §§ 1985, 1986

### (Defendants Bass, Choi, Goeitting, Reyna, Ochoa, and Does #1-5)

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

64. Defendants Bass, Choi, Goeitting, Reyna, Ochoa, and all other as-yet unnamed Doe co-conspirators, together reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and conspired among and between themselves to commit unconstitutional overt acts, including the racial profiling and harassment of African Americans in Los Angeles and deliberate indifference to those officers who deprive others of constitutional rights.

65. Because the conspiracy or conspiracies and the overt actions in furtherance thereof were done and continue to be done with the knowledge and purpose of depriving Plaintiff, who is African American, and numerous other African-American victims of the equal protection of the laws and equal

privilege and immunities under the law, and with racial animus toward the Plaintiff and the other victims of this racially motivated conspiracy, the Defendants also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment and under 42 U.S.C. § 1985.

66. Defendants Bass, Choi, Goeitting, Reyna, Ochoa, and all other as-yet unnamed Doe co-conspirators, knowing that the above § 1985 conspiracy to deprive African Americans of their rights, and having the power, authority and duty to prevent or aid in preventing the commission of the acts in furtherance of the conspiracy, neglected and refused to do so, in violation of 42 U.S.C. § 1986.

67. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## FOURTH CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – CALIFORNIA CIVIL CODE §§ 51.7, 52, 52.1, 52.4
## (All Defendants)

68. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

69. Defendants are subject to liability under California Civil Code §§ 51.7, 52, 52.1, and 52.4 because they violated Plaintiff's federal and state constitutional and statutory rights, including his right to be free of excessive force, his right to be free of unlawful seizure, and his right to bodily integrity as guaranteed by the Fourth Amendment, Cal. Const. Art. I, § 13 and Cal. Civ. Code § 43. Defendants violated each of these right through the use of violence, coercion and intimidation, including the beating, arrest, imprisonment, and sexual assault of Plaintiff based on his identity as a Black transgender man.

70. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## FIFTH CLAIM FOR RELIEF

## BATTERY

### (Defendants Goeitting, Reyna, Ochoa, and Does #1-5)

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

72. Defendants battered Plaintiff by touching him offensively and nonconsensually with intent to cause harm.

73. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## SIXTH CLAIM FOR RELIEF

## SEXUAL BATTERY

### (Defendant Reyna)

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

75. Defendant sexually battered Plaintiff by intentionally touching his breast offensively and nonconsensually with intent to cause harm.

76. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## SEVENTH CLAIM FOR RELIEF

## FALSE ARREST AND IMPRISONMENT

### (Defendants Goeitting, Reyna, Ochoa, and Does #1-5)

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

78. Defendants wrongfully arrested and imprisoned Plaintiff without justification or probable cause.

79. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as alleged above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in an amount according to proof;

COMPLAINT

13

2. Special damages in an amount according to proof;

3. Exemplary and punitive damages against each individual and Doe defendant in an amount according to proof;

4. Statutory damages under the Fourth Cause of Action;

5. Costs of suit, including attorneys' fees and a multiplier; and

6. Such other relief as may be warranted or as is just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues raised in this complaint.

Dated: October 18, 2024

Joundi White

By: Joundi White

Plaintiff in Pro Per

COMPLAINT

14

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. §1746; 18 U.S.C §1621. Executed at Los Angeles, California on October 18, 2024.

*Joundi White*

Joundi White

Plaintiff in Pro Per

COMPLAINT

15